CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
OCT 31 2016
JULIA C. DUDLEY, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| TROY PETERSON, | ) | CASE NO. 7:16CV00207 |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | MEMORANDUM OPINION |
| | ) | |
| | ) | |
| E.R. BARKSDALE, ET AL., | ) | By: Hon. Glen E. Conrad |
| | ) | Chief United States District Judge |
| Defendants. | ) | |

Troy Peterson, a Virginia inmate proceeding pro se, filed this civil rights action under 42 U.S.C. § 1983, alleging that officials at Red Onion State Prison ("Red Onion") used excessive force against him. A number of motions are pending. After review of the record, the court will grant Peterson's proposed amendments to the complaint and deny his motion for default. The court will also grant the motion to dismiss on behalf of some defendants, deny without prejudice plaintiff's motion regarding new defendants, and grant his motion to compel production of camera footage related to his claims.

I.

Peterson's § 1983 claims arise from the following alleged events. On February 9, 2016, officers escorted Peterson to Cell C214. Looking into the cell, Peterson smelled and saw brown feces on the right inside wall. He asked Officers Akers and Messer not to place him in a dirty cell, but Messer entered the cell and placed Peterson's property on the bottom bunk. The officers said they did not see any feces and ordered Peterson to enter the cell. He did so and saw more feces on the other walls, on the light fixture, and on the back of the door. He begged the officers not to make him stay there. Suddenly, "[his] hands and arms were yanked out of the hand cuff pass and [he] was being yanked from side to side (as if [he] was a tuna being pulled into a boat).

[A]fter about 30 seconds of this, Defendant Messer took the cuffs off." (Compl. 2, ECF No. 1.) Peterson walked away from the door and looked down to see "blood running down his arms and hands from deep cuts." (Id.) His left hand looked like it was broken, and he felt muscles in his right forearm had been pulled. Peterson started kicking his door to get medical attention.

Sgt. Hall and other officers came to the cell door. Peterson showed them his injuries and told them about the feces in the cell. Hall said he would not be moving Peterson and told him to stop kicking the door. Peterson then threatened to break the sprinkler or cover his window to get moved out of the dirty cell. Hall said he was taking Peterson's property and ordered him to comply with cuffing procedures. Peterson did so. Hall ordered officers to move Peterson to Cell 308. On the way, a nurse arrived and assessed Peterson's injuries. At Hall's order, while Peterson was on his knees in front of Cell 308, an officer stripped off Peterson's clothes in sight of other inmates in nearby cells. A hand felt up Peterson's leg, "rubbed . . . from [Peterson's] penis up his ass (no penetration)," and "grabbed [his] nutsack)." (Id. 3.) Peterson complied with an order to enter the cell, someone returned his boxer shorts, and the nurse returned to clean his cuts. After the nurse left, officers placed Peterson's property into the cell and gave him dinner. The next day officers escorted Peterson to the medical unit for further assessment of his injuries, and an X ray of his hand was ordered. Hall later apologized and asked Peterson to forget about the incident.

Peterson filed his § 1983 complaint in late April 2016. He sues Red Onion Warden Barksdale, Sgt. Hall, Lt. Gilbert, and Officers Messer, Akers, and Vaughn, along with four unknown officers, seeking monetary damages. Pursuant to the waivers of notice of summons that the named defendants filed, they had until July 24, 2016, to file responsive pleadings. On Monday, July 25, Barksdale, Gilbert, and Vaughn filed a motion to dismiss, and Hall, Messer,

2

and Akers filed an answer. Peterson then moved for default judgment, but also responded to defendants' submissions and moved to amend his complaint.

In his proposed amendments, Peterson alleges that Akers pulled him through the tray slot, causing injuries to his hands and arms; Messer failed to intervene; Akers and Messer failed to report this use of force; Lt. Gilbert made no reports; Barksdale "has covered up a felony" and has "conspire[d] to hinder due-process and investigations"; and Officer Vaughn failed to report these events. (Amend. 2-3, ECF No. 23.) Peterson also states that in addition to relief already requested, he also seeks access to therapy for "P.T.S.D." (Id. 4.)

II.

A. No Default Judgment

As an initial matter, Peterson's motion for default judgment must be denied as lacking merit. The defendants who waived service have each filed a timely motion to dismiss or answer in response to the complaint. See Fed. R. Civ. P. 6(a)(1)(C) ("if the last day [of a filing period] is a Saturday, Sunday, or legal holiday, the period continues to run until . . . the next day that is not a Saturday, Sunday, or legal holiday").

B. Motion to Dismiss

A motion to dismiss tests the legal sufficiency of a complaint. See, e.g., Bell Atl. Corp. v. Twombly, 553 U.S. 544, 553-63 (2007). "[T]he complaint must be dismissed if it does not allege enough facts to state a claim to relief that is plausible on its face." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008) (internal quotation marks and citation omitted). In conducting its review, a court must view the facts in the light most favorable to the plaintiff, but "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Id. (internal quotation marks and citation omitted).

3

Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights. See Cooper v. Sheehan, 735 F.3d 153, 158 (4th Cir. 2013). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Ashcroft, 556 U.S. at 676. "[I]t is well settled that violations of state law cannot provide the basis for a due process claim" under § 1983. Weller v. Dep't of Social Services, 901 F.2d 387, 392 (4th Cir. 1990) (citation omitted).

Defendants Barksdale, Vaughn, and Gilbert have moved to dismiss Peterson's claims against them, based on his failure to identify in the original complaint any misconduct that they had committed in connection with his basic claims of excessive force. Peterson has tried to correct this deficiency, but his additional allegations against these officers still fall short. At the most, he alleges that they failed to report or investigate complaints he made to them after the alleged use of force and strip search incidents. Even if prison policy required investigations or reports that the defendants failed to make, such policy violations do not equate with a constitutional violation and are not actionable under § 1983. Peterson fails to identify personal actions these defendants took that caused or contributed to the alleged constitutional violations committed by their subordinates during the incidents. Accordingly, the court will grant the motion to dismiss the claims against Barksdale, Vaughn, and Gilbert.

## C. New Defendants

In a separate motion (ECF No. 27), Peterson seeks to add the following new defendants and allegations: N. Stephens and L. McCowan escorted him to the cell where the strip search occurred; S. McDaniel filed false documents and stole Peterson's medical records without his consent; and Lt. Flanning threatened that Peterson would "get in tro[u]ble" if he did not drop his

4

complaint, did not respond to Peterson's complaint, and threw away some grievances. (Amend 1, ECF No. 27.) Peterson states, however, that he is still unable to identify the person(s) who participated in the strip search. He moves to compel the defendants to allow him to view related video footage to identify these person(s).

The court concludes that the motion to amend (ECF No. 27) must be denied without prejudice. Peterson's allegations simply fail to state any constitutional claim against Defendants Stephens and McCowan for merely escorting him to a cell, or against Lt. Flanning for making vague verbal threats and mishandling complaints or grievances Peterson filed after the alleged use of force and strip search. See Henslee v. Lewis, 153 F. App'x 178, 180 (4th Cir. 2005) (finding allegations of verbal abuse and harassment by guards, without more, do not state any constitutional violation) (citing Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)); Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994) (finding inmates have no constitutional right to prison grievance procedures). The amendment to raise a claim against McDaniels must be denied because this claim is not properly joined to the other claims in this case. See Fed. R. Civ. P. 20(a)(2) (allowing joinder of claims arising from same occurrence or series of occurrences and having common questions of law and fact). Peterson fails to establish that the claim about his stolen medical records is related in any respect to the alleged use of force or strip search incidents.[1] For these reasons, the court will deny the motion to amend.

---

[1] The court notes that Peterson has filed a separate § 1983 action against McDaniels, Case No. 7:16CV00457, for the alleged theft of medical records concerning Peterson's religious diet.

5

The court will, however, grant Peterson's motion to compel defendants to allow him to view the video footage related to the use of force and strip search incidents. Thereafter, he may amend to identify the John Doe defendants who participated in the strip search. An appropriate order will issue this day.

The clerk will send a copy of this memorandum opinion and the accompanying order to the parties.

ENTER: This 31st day of October, 2016.

Jen Conrad
Chief United States District Judge